Hon. JAMES BARRETT,  
Hon. ASAHEL PECK,  
Hon. WILLIAM C. WILSON, } Assistant Judges.  
Hon. BENJAMIN H. STEELE,  
Hon. JOHN PROUT,

---

## TROY AND BOSTON RAILROAD COMPANY *v.* JOHN M. POTTER.

*Railroad.   Land Damages.   Right to Exclusive Possession.*

Where a land owner agrees with a railroad company upon his compensation for land taken in locating the road, and permits the company to take possession of the land and construct the road thereon, he cannot thereafter take advantage of the omission of the company to have a certificate of the survey recorded in the town clerk's office in the town where the land lies, as required by the charter; and especially where the land owner was the president of the company, and as such it was his duty to have the record made.

Where the company took the land, not by purchase, but by survey and location under and according to the power and authority conferred by their charter, they obtained all the title to it that they could acquire subject to the payment of damages to the owner; and in the settlement of the land damages an agreement, that the owner might have the herbage growing thereon from year to year, could not avail him against the lessees of the company who took the road while the company was in full possession, without knowledge of such agreement, and there being nothing to indicate its existence so as to put them on inquiry.

29

The owner of the land adjoining a railroad, and from whom the land was taken by the railroad company for the construction and legitimate use of the road under the power conferred by their charter, has no right to enter at will upon the land, after it is so taken and while it is being so used, and cut and take therefrom the herbage and other products of the soil growing thereon.

TRESPASS on the freehold. The plaintiffs' declaration described the close in which the alleged trespasses were committed as being " a certain lot of land of the plaintiffs, situated and being in Pownal, in this county, and being a strip of land over which the Southern Vermont Railroad was formerly laid, and that part of said piece of land which is adjoining to a piece of land occupied by the defendant." The trespasses complained of were alleged in the declaration to have been committed on the 15th day of June, 1860, " and on divers days," etc. Plea, not guilty and notice. Trial by jury at the December term, 1866, Bennington county, KELLOGG, J., presiding.

The plaintiffs' evidence tended to show that the Southern Vermont Railroad Company had built their road and operated it until their lease to the plaintiffs in 1857, and since then the plaintiffs have operated it; that the defendant broke and entered said close and cut and carried away the herbage therefrom, which were the trespasses complained of, and that the road was fenced and enclosed when the trespass was committed.

The plaintiffs introduced an original deed or instrument of lease, dated January 9th, 1857, from the Southern Vermont Railroad Company, of its railroad to the plaintiffs to hold during the existence of the charter of the lessor. The due execution of this lease was not questioned. It was agreed by the parties that a copy of the survey of the route or line of the railroad of the Southern Vermont Railroad Company in the town of Pownal, as recorded in the office of the town clerk of that town, should be treated as evidence introduced by the plaintiff, subject to all legal objections, and the same may also be referred to. The plaintiff also referred to the act of the legislature of this state, incorporating the Southern Vermont Railroad Company, approved November 13th, 1848, (acts of 1848, page 50,) and then rested.

The defendant, to sustain the issue on his part, testified as follows :

" The railroad of the Southern Vermont Railroad Company crosses my land. I was president of that Company from its first organization up to within a year of its being leased to the Troy and Boston Railroad Company or the Troy and Greenfield Railroad Company. There was a committee appointed by the Southern Vermont Railroad Company for the purpose of getting at, or settling, the land damages on the line of the road. I made an agreement with the committee that the road might pass through my land, and that they might take all the land they wanted for the road, reserving to me the herbage and all that grew upon the land outside of the track of the road, and I considered that this reservation was taken into account in fixing my land damages. The price was low—two hundred dollars per acre—a small sum, for the land required. From the time the Railroad Company entered upon this land down to the time of the commencement of this suit, I cut the grass every year within the lines of the railroad and outside of the railroad track, and did not know of any objection to it.

" It was understood between me and the Railroad Company, or this committee, that the Railroad Company should have the use of the land all they pleased for the purposes of a railroad, and that I should have the grass, and all that grew outside of the track, and that they should not put any huts on the land. I made this condition or arrangement before the work was commenced. I could not tell who paid me my land damages. They were agreed at two hundred dollars per acre on this understanding. The road run about sixty rods on my land. I assisted in getting the land damages adjusted and the road through. I think that it was less than a year after the road was surveyed and staked out that the land damages were agreed on. I cannot tell how long it was after the route was surveyed that the land damages were paid—it strikes me that the stakes were stuck a long time before the land damages were settled. I received the money which I agreed to take for my land damages. It was paid to me for my land damages as I suppose, or for the right of way through my land. I do not remember of giving any receipt for the money paid to me, and I do not recollect that I gave any deed or other writing for it. I do not know but that the money came into my hands, as president of the Company, to pay it out. It was the committee who agreed with me for my land, but I cannot tell which one told me that they would accept my terms. I objected to making any agreement unless they would give me the right to the herbage in it. Whatever money was paid to me was received in full for my land dam-

ages, under this agreement—understand—in respect to the herb-age, etc."

The parties agreed that a verdict should be directed by the court, *pro forma*, upon the plaintiff's opening evidence and the testimony of the defendant as above stated, assuming, for the pur-poses of the present trial, the facts stated in the testimony of the defendant to be true, but reserving the exceptions taken as to the admissibility of the said testimony, and as to the correctness of the ruling of the court in directing the verdict. It was not claimed by the plaintiff on the trial that the Southern Vermont Railroad Company ever acquired any interest in the land, on which the acts of trespass complained of in this action were alleged to have been committed, in any other way or manner than is above stated in the testimony of the defendant.

The court thereupon directed the jury, *pro forma*, to return a verdict in favor of the defendant, to which the plaintiff excepted.

*E. J. Phelps*, for the plaintiffs.

The right of a railroad company to exclude the proprietor of the land over which the road is laid, from cultivation or gathering herbage within the limits of the road, has been established by ex-press decision of this court. *Conn. & Pass. R. R. Co.* v. *Holton*, 32 Vt., 43 ; . *Jackson* v. *Rut. & Bur. R. R. Co.*, 25 Vt., 150 ; *Hurd* v. *Rut. & Bur. R. R.*, 25 Vt., 116. The parol agreement between the defendant and the Southern Vermont Railroad Com-pany, which the defendant's evidence tended to show, gave him no additional right in this respect as against the plaintiffs, and should have been excluded. (1.) That the land in question was taken with-out the intervention of commissioners is unimportant. The office of commissioners, under the charter, is merely to fix the amount of damages in case the parties " are unable to agree." Their proceedings do not pass the title, nor give any right of action for the damages awarded, unless the company elect afterwards to take the land. *Stacy* v. *Vt. Cen. R. R. Co.*, 27 Vt., 39, and 32 Vt., 551. If the parties agree as to the amount of damages, and the land is taken and occupied, either upon payment, or by consent of the owner without payment, the title passes in precisely the

same manner, and with the same effect, as if the amount had been fixed by commissioners. The rights of both parties are therefore the same in the one case as in the other. (2.) Land thus taken for public use, in the exercise by the State of their power of eminent domain, cannot be encumbered by any reservation between the land owner and the company, of a right inconsistent with the purpose for which it is taken, or contravening public policy in the execution of that purpose. (3.) Even if the Southern Vermont Railroad Company could legally make such an agreement as the defendant claims, it would not bind the plaintiffs, who are subsequent purchasers for full value, without any notice of the agreement, actual or constructive. No deed of the land is required by the charter, and the absence of a deed is therefore no constructive notice to the purchaser. The legislature have, in this case, expressly authorized the acquisition of a title without conveyance, upon mere occupation of the land and payment for it. Consequently a parol reservation no more binds a subsequent purchaser, without notice, than if the title had passed by deed. And the purchaser has a right to rely on a title evidenced in the only way the law requires.

*G. W. Harmon*, for the defendant.

The defendant's title to the *locus in quo* prior to its having been appropriated by the Southern Vermont Railroad Company being conceded, it was incumbent upon the plaintiffs to show some right to call upon the defendant to respond in damages for cutting the herbage growing upon his own premises. This right might have been acquired by the plaintiffs' lessor in either one of the two ways: (1.) By deed, which is not pretended to have been the case. (2.) By survey and appraisal, or agreement as to damages, and payment thereof. Laws of 1848, p. 51, § 4; p. 52, § 7. No record of any survey pursuant to this statute is shown to have been made —none in fact was made. Redf. on Railw., 3d Ed., p. 240 and 243; *Davis* v. *E. T. & Ga. Railw.*, 1 Sneed., 94; *Hazen* v. *Boston & Maine*, 2 Gray 574; *Stone* v. *Cambridge*, 6 Cush., 270; *Hayes* v. *Shackford*, 3 N. H., 10; *Lewiston* v. *Co. Com.*, 30 Maine 19; *Little* v. *Newport*, 14 E. L. and Eq., 309; *Springfield* v.

*Conn. Riv. R. R.*, 4 Cush., 63, 69, 70; *Charlestown* v. *Co. Com.*, 7 Met., 78. Hence the plaintiffs fail utterly to establish any right to the *locus in quo* under either of the modes known to the law. But if the defendant's conduct in permitting the Southern Vermont Railroad Company to enter upon the lands, upon paying to him the agreed value of them, should be regarded as an estoppel, so as to prevent his resuming the possession, his conduct is to be characterized precisely according to the terms under which the company entered. (1.) The plaintiffs in taking a lease from the Southern Vermont Railroad Company acquired and can claim no greater or other rights than its lessors had. If the title of the plaintiffs' lessors had appeared of record, possibly the plaintiffs' right to the full enjoyment of that title thus appearing would not be impaired by parol agreements between the original parties, but the legislature having provided for record evidence of title, a purchaser finding none, as in this case, is put upon inquiry, and consequently takes the property, subject to all the stipulations, reservations and equities which existed between the original parties. (2.) It cannot be objected that the agreement in this case contravenes any rule of policy, so as to render the reservation void; it does not lie with the plaintiff to make this objection. Redf. on Railw., 3d Ed., p. 3, § 1, Pl., n. 3, n. 4; p. 220, § 61, Pl., n. 7; *Rathbone* v. *Tioga Nav. Co.*, 2 Watts & Serg., 74; *Norris* v. *Vt. Central*, 28 Vt., 99. The Southern Vermont Railroad Company had its option, to make the agreement as stated, or to cause an appraisal according to the statute to be made.

Had the land been taken according to the statute, the right of the defendant to enter upon the land within the limits of the railroad, to take the herbage, would have existed without any express reservation. Redf. on Railw., 3d Ed., p. 247, § 69, Pl., n. 1; 251, § 69, Pl., n. 8: *Blake* v. *Rich*, 34 N. H., 282; *Preston* v. *Dubuque*, 11 Iowa, 15.

Argued at the general term, 1867.

The opinion of the court was delivered by

PIERPOINT, C. J. This is an action of trespass on the freehold, brought to recover the damage sustained by the plaintiffs in consequence of the defendant's entering upon the line of the Southern

Vermont Railroad, of which the plaintiffs are the lessees, where said road crosses the farm of the. defendant, and cutting and taking away the grass growing upon the said road, and within the lines and fences thereof; the plaintiffs being at the time in possession, and using the same for the purposes for which it was constructed: the object of the suit being to test the right of the defendant so to do.

The defendant claims the right to enter upon the premises in question, and to cut and take off the herbage, on the ground that after the said road had been surveyed, and the lines thereof staked out and established across the defendant's farm, in settling the question of land damages between himself and the Company, it was agreed and understood that he was to have such right; and that he understood at the time that this right was taken into consideration in fixing the amount of such damages. And in aid of this claim, the counsel of the defendant insists that said corporation, in taking the land under their charter, did not cause a certificate of the survey of said road to be recorded in the town clerk's office in the town where the land lies, as required by said charter, and for that reason they got no title or right in the land in question, except such as they acquired by virtue of the contract between them and himself.

It appears from the bill of exceptions, that it was agreed by the parties upon the trial that a copy of the survey of the route or line of the Southern Vermont Railroad Company, in the town of Pownal, as recorded in the office of the town clerk of that town, should be treated as evidence introduced by the plaintiffs, subject to all legal objections, and the same referred to. No question appears to have been made in the county court in respect to the survey or its record, but the trial proceeded to judgment upon the supposition that the survey was duly recorded, and a copy of the record in evidence; and as no question arose upon it, there was no occasion to attach a copy thereof to the case as made up for this court. We cannot, therefore, assume that no such record exists, but must take the case as it is made up, which shows that a copy of the record was there treated as in the case, and so it must be regarded here.

But suppose no record of the survey of the road was in fact

made as required by the charter, would that preclude the plaintiffs' recovering in this case ? It appears that the road was, in fact, surveyed, located, and its limits clearly defined across the land of the defendant by the corporation, and of this the defendant had full knowledge at the time. He was, in fact, then the president of the corporation. With a full knowledge of all the facts, he proceeds to arrange with the Company as to the damages for the land so taken; and, having satisfactorily fixed the amount, he receives the sum agreed upon. He permits the Company to enter upon and take possession of it, and construct their railroad over it. Now, if we say that the plaintiffs cannot recover in consequence of the neglect to record the survey alone, it must be on the ground that the Company acquired no rights whatever in their road across the defendant's premises, and that the defendant now has the right to enter upon it, and take the entire and exclusive possession of it. This, we think, will hardly be claimed.

The survey and location of the road is what constitutes the taking of the land over which it is laid; and when so taken, it is the duty of the Company to cause a certificate of the survey to be recorded, and to pay the damages to the land owner before they take possession. If, however, the land owner, as in this case, agrees upon his compensation, and permits the Company to take possession of the land, and construct their road thereon, we think it is then too late for the land owner to take advantage of the omission by the Company in these respects.

There is another reason, we think, why the defendant cannot avail himself of this objection. He was at the time the president of the Company. As such, it was his duty to see that the survey was recorded. To allow him now to take advantage of the omission to make such record, would be to permit him to take advantage of his own wrong, to the prejudice of the Company that he was bound faithfully to serve.

We think this case is to be governed by the same principles that are applicable in all cases where the land is taken by a railroad company, a survey made and duly recorded as required by the charter.

It is further claimed by the defendant that the right of the plain-

tiffs to recover is affected by the agreement between the defendant and the committee appointed by the Company to settle the land damages on the line of the road, by which he reserved the herbage and all that grew upon the land outside of the track of the road; and he says: "I considered that this reservation was taken into account in fixing my land damages."

It may be observed that, in this arrangement, neither party was contracting for the land, and this agreement had no reference to its transfer by the defendant to the Company. The Company did not take the land by purchase, in the ordinary acceptation of that term, but took it by survey and location, under and according to the power and authority conferred by their charter. There is no qualification or limitation in respect to what they take; the extent of the acquisition is determined only by the power to take, given by the act of incorporation. The defendant had no power to impose restrictions, or make reservations. When the Company had so taken the land, they had obtained all the title to it they could acquire, subject to the payment of the damages to the owner. If the Company had the power to take from the defendant the right to enter upon the land so taken, and cut and take away what was growing thereon, then they had taken it, and no attempt to make a *reservation* by the defendant, as he states, would be of any avail.

If, then, the defendant obtained any rights by virtue of what transpired between him and the committee of land damages, such rights depend solely upon that agreement, without aid from the fact that the land was taken from the defendant, the same as if the agreement had been made with a party not an adjoining land owner. We think the most that can be claimed for the defendant is a verbal agreement, between him and the Company, that he may enter, and cut and take away what grew on the land outside of the track of the road. What would be the effect of such an agreement in a case like the present, between the Company and the defendant, it is not necessary now to enquire. As it seems very clear that the present plaintiffs, having purchased the entire rights of the Company in this road, and taken a lease thereof for all time, without any knowledge of the existence of any such

agreement, or anything to indicate its existence, so as to put them upon enquiry, but finding the Company in full possession up to the time of the lease, they cannot be affected by the existence of any such agreement.　This brings us to the consideration of a more important question, one that affects not only the parties to this controversy, but, to a greater or less extent, probably, all the railroad corporations and operators, and the land owners adjoining railroads, in this state, namely : Has the owner of the land adjoining the road, and from whom the land was taken by the railroad company, for the construction and legitimate use of the road, under the power conferred by their charter, the right, at will, to enter upon the land, after it is so taken, and while it is being so used, and cut and take therefrom the herbage and other products of the soil growing thereon ?　This question is often referred to in the books, in the discussion of questions of a somewhat similar character, but I am not aware that this precise question has been decided —it certainly has not in this state—but I think the inclination of judges, and legal writers, is strongly towards the opinion that those who control, manage and operate the railroads in the country should have the full and exclusive possession and control of the land taken, for the legitimate use of the road, within the lines thereof, and embraced within the fences that, by the laws of this state, the railroads are required to keep upon the sides of their road.　Although the right of the railroad company is but an easement, and not a fee, this does not preclude their having the sole and exclusive possession of the land while in the exercise of that easement.　The fact that, upon the abandonment or surrender of their road and charter, the land would revert to the former owner, does not curtail their right to its exclusive use if necessary.　It is said by REDFIELD, C. J., in *Jackson* v. *Rut. & Bur. R. R. Co.*, 25 Vt., 150, " that the railway company must, from the very nature of their operations, in order to the security of their passengers, workmen, and the enjoyment of the road, have, at all times, the right to the exclusive occupancy of the land taken, and to exclude all concurrent occupancy by the former owners, in any mode and for any purpose."　He says further, " that as to the right of the former owners to the herbage growing on the land,

or to dig up the soil and subsoil, it is not necessary here to consider." He also says that "it is obvious that the right of the railway to the exclusive occupancy must be for all the purposes of the road, much the same as that of an owner in fee." Although this question was not distinctly before the court in that case, still it stands as the deliberately expressed opinion of an eminent judge and jurist, and one specially learned in the law of railways, and as such the opinion is entitled to great weight. As to the right of the adjoining land owner to enter and dig up the turf, the question was distinctly before this court in the case of the *Conn. & Pass. Riv. R. R. Co.* v. *Holton*, 32 Vt., 43, and it was there expressly decided that the land owner had no right to enter for that purpose. In delivering the opinion in that case, Judge Aldis cites approvingly the language of Judge Redfield above referred to, and then proceeds as follows: "Without stopping to enquire whether a possible case may not exist when the land owner might enter to obtain mines or minerals, or to take herbage or other vegetable growth, it is obvious that the possession of the railroad company must, ordinarily and practically, be absolute and exclusive. Hence any entry by the land owner, or any act done by him upon the land, which tends in the least to impair the structure of the road, to endanger the running of trains, to lessen the safety or comfort of passengers, or generally to embarrass the use of the road for the purposes for which it was built, must be deemed wrongful." The principle involved in that case is substantially the same as that in the present, and it is not easy to make a material distinction between the two. It is true there are some objections to the act done, in one case, that do not exist in the other. The annoyance from dust, occasioned by removing the turf, would not result from cutting the herbage, but the instances in which the land owner would wish to remove the turf would be rare, if the right were conceded ; but if the right to remove the herbage be conceded, a large part of the adjoining land owners throughout the state would be found, at the proper season, within the lines of the roads, with their hired men, tools and perhaps teams, for the purpose of taking off the herbage, and the detriment to the railroad company, and the danger to trains and passengers, would be

increased a thousand fold in the latter case beyond that in the former. The men employed by the land owners would be likely to be careless, both in respect to being upon the track in person, and temporarily laying their tools thereon, from which accidents might reasonably be expected to occur, to avoid which a constant and additional degree of watchfulness would be required on the part of the engineers having trains in charge. They would know that they were always liable to find such working parties upon their road, but when and where, and under what circumstances, they would have no means of determining. And under the best management, on the part of the railroad company, accidents might reasonably be expected to occur from such causes. In the removal of such causes the railroad companies, and the traveling public, are greatly interested. Everything, that tends to increase the danger of travel upon our railroads, public policy requires should be prevented if practicable. The value of this right to the land owners is slight, and, in a majority of the cases, was probably well characterized by the defendant in this case, when he stated, in his testimony, that the damage for cutting the grass was not two and sixpence. The railroad companies are always likely to suffer severely in their property, in cases of accident. They are also, to a certain extent, liable to others for injuries resulting from such causes, and to this liability they should be strictly held. At the same time, we think they should have such sole and exclusive control of the land within the lines of their road as shall enable them so to keep it as to exclude all probability of any accident resulting from any outside interference with such possession.

Upon the facts developed in this case, we think the *pro forma* ruling of the court below, in directing a verdict for the defendant, was erroneous.

Judgment reversed, and case remanded.