No. 9334.

## HAGAMAN v. MOORE ET AL.

HIGHWAY.—*Public Utility.*—*Evidence.*—The public utility of a proposed highway, on appeal to the circuit court from the decision of the board of commissioners, need not be shown by direct evidence, but may be inferred from the facts and circumstances in proof.

SAME.—*Condition of Existing Road.*—*Witness.*—*Cross-Examination.*—When, in trying the question of the utility of a proposed highway, a witness has testified as to the condition of a road near by, on the State line between this State and Ohio, it is not competent to enquire, on cross-examination,

why that road had not been better worked, and especially to show that there had been disagreements between the supervisors of the two States in respect to working it.

SAME.—*Appropriation of Land.*—*Damages and Benefits.*—*Constitutional Law.*— In estimating the damages for the taking of land for a highway, including the value of that taken, benefits to the complainant from the proposed way may be considered. The constitution is not violated by so doing.

SAME.—*Fee not Taken.*—*Easement.*—*Eminent Domain.*—*Rental Value.*— Though land appropriated for a highway is taken for a presumably permanent use, only an easement is acquired, the title and all consistent uses remaining in the owner or occupant; consequently, evidence of the rental value of the land taken is not admissible to show damages.

SAME.—*Evidence.*—*Opinions.*—The opinions of witnesses are not admissible to show the benefits or damages which will result from the opening of a highway, nor to show the different values of the lands with and without the road. These must be determined by the jury in the light of other competent evidence.

From the Wayne Circuit Court.

*W. A. Bickle*, for appellant.

*H. C. Fox*, for appellees.

WOODS, C. J.—The appellees, before the board of commissioners, and in the circuit court, procured an order for the establishment of a highway across the lands of the appellant; and this over his remonstrance, claiming damages and denying the public utility of the way. The error insisted upon is the overruling of the motion for a new trial.

It is claimed, first, that there was no proof that the proposed way would be of public utility. We think the facts and circumstances in evidence are sufficient to support the verdict in this respect.

A witness testified, on behalf of the petitioners, that there were high and steep hills and other difficulties in the State Line road, which made that road impracticable for loaded wagons. On cross examination the appellant sought to show that the road referred to had been travelled in the usual way for twenty years; that there had been a long dispute between the Ohio and Indiana roadmasters and supervisors as to whose

duty it was to work the road, and consequently it had not been worked, and was out of repair; else it would afford all the facilities proposed to be supplied by means of the new way. This was not permitted, and the ruling is complained of. Whether it would have been competent for the appellant to make proof of the work necessary to be done, and the cost to be incurred in putting and keeping that road in good condition, need not be determined; it was not within the strict scope of a cross examination of testimony which was addressed to the actual condition of the road; and so far as it was proposed to investigate or show the disputes between supervisors, the enquiry was plainly irrelevant.

The appellant gave evidence of the value of his land which it was proposed to take for the road, and also offered to prove its annual rental value. This the court excluded, because, according to the record, it had not been shown that any party to the action held an estate for years or for life in the land. There was no error in this. The taking of land for a high-way is presumably for a permanent use; but the fee is not taken, only an easement; and, subject to the public use, the title and all consistent uses remain in and belong to the individual owner and occupant. The offer, therefore, to prove the entire annual rental value of the land within the limits of the proposed way, even if an estate for years or for life had been involved, was an offer to show the value of more than would be taken.

The principal question in the case has reference to the measure of the damages proper to be allowed in such cases.

The appellant in the first instance, as he claims, confined his proof on the subject to the value of the strip of land to be taken, and to the cost of fencing his adjacent land on either side of this strip. The petitioners were then permitted to offer evidence of the value of his lands per acre without the proposed road, and of what the value would be with the road. This, it is insisted, was wrong, because, 1. The appellant "had made no claim that the balance of the land not taken

would be damaged;" 2. "By section 21, art. 1, of the Constitution of this State, it is made fundamental that 'No man's property shall be taken by law without just compensation,'" and hence it is not "in the power of the Legislature to pass a law that will take away a man's property and compensate him by general *benefits;*" and, 3. The testimony so offered resolved itself into mere opinions of the witnesses.

It is a mistake to say that the appellant had offered no evidence of damage to the remainder of his land not proposed to be taken. The necessity of fencing along the proposed highway was plainly on account of that land, and to that extent, upon his own theory of the law, it was competent to set off the benefits which the road would bring to such lands.

If the appropriation of land for a highway were the taking of the fee instead of a mere easement, there would be more force, perhaps, in the constitutional argument; but as early as 1840, under a similar constitutional restriction, the provision of the statute concerning internal improvements, to the effect that, in the assessment of damages, the benefits resulting to the complainant should be taken into consideration, was held constitutional. *McIntire* v. *State*, 5 Blackf. 384. In that case the meaning of the Constitution was declared to be: "Not that property thus taken shall be valued and its price paid in money, but that the individual who claims to be a sufferer, in consequence of the exercise of the right of eminent domain over his property, shall be recompensed for the actual injury which he may have sustained, all circumstances considered, by the measure of which he complains. In ascertaining the extent of the injury, undoubtedly, an estimation of the value of the property taken, at the time of taking, is a necessary step; but if the benefits really and substantially resulting to the claimant equal, in pecuniary value, the value of that of which the public has deprived him, we conceive they constitute a just and constitutional compensation for the deprivation to which he has been subjected; and such, in our opinion, is the nature of the benefits contemplated by the

statute in question—the enhancement of the value of property by the construction of a public improvement."

If the framers of the Constitution of 1851 had intended that, in this respect, a different construction should be put upon that instrument, they would doubtless have so changed the phraseology as to make their intention unmistakable. On the contrary, the debates in the convention show that an unsuccessful attempt was made to accomplish such a change. Debates, vol. 1, pp. 361-392; *Indiana, etc., R. R. Co.* v. *Hunter,* 8 Ind. 74.

Nothing inconsistent with this doctrine is to be found in the cases of *Crossley* v. *O'Brien,* 24 Ind. 325, and *White Water, etc., R. R. Co.* v. *McClure,* 29 Ind. 536.

The last named case arose under a statute which forbids the consideration of benefits; while the law for the opening of highways contains no such inhibition, and by its terms plainly indicates an intention that the benefits should be considered and deducted from the damages, whether arising from the value of the property appropriated or from other causes. It provides that the reviewers " shall proceed to review the proposed highway and assess the damages, *if any,* which such objector may sustain from such highway    *    *    being opened    *    *    *    through his lands;" and it was accordingly held, in *Sidener* v. *Essex,* 22 Ind. 201, that the measure of damages in such a case was the difference between the market values of the lands with and without the road. Correspondingly, the measure of benefits must, it seems clear, be estimated in the same way.

It follows that the court did not err in instructing the jury to consider, "among other things, the present value of the land, its shape, and how it would be affected by the road; what additional fences, if any, would have to be made and maintained; how it would affect communication between different portions of the land; the amount and value of the land appropriated; the number and condition of the roads

already upon the land and near it; also any benefit that the opening of the road would be to said lands."

The question remains, however, whether the testimony of the witnesses, in respect to the difference of values of the lands of the appellant with and without the road, was admissible.

The case of *Frankfort, etc., R. R. Co.* v. *Windsor,* 51 Ind. 238, is cited by the appellees, but it is not directly in point. The question asked the witnesses in that case, and which was objected to was: "State how the road ran through the tract of land, and what is the value of the fractions made by the railroad." Before this was asked the witnesses had testified, without objection, to the value of the entire tract; and the court held that the question propounded was competent as calling for an opinion of the value of specific pieces of property from witnesses shown to have sufficient knowledge to make them competent; and it may be observed that the testimony had reference to the existing condition of the property.

The appellant cites the case of *Baltimore, etc., R. W. Co.* v. *Johnson,* 59 Ind. 247, wherein a witness, after testifying to the value of appellee's farm per acre at the time of the appropriation, was asked and allowed to answer as to how much less the farm would be worth by reason of the construction of the railroad across it, considering the amount of land taken, the necessary additional fencing, the manner in which the land is cut, the inconvenience of crossing and re-crossing, and the grade of the road-bed; and other like questions were put and answered to the advantage of the appellee in that case. This court (WORDEN, J.) said: "We are of opinion that the court erred in admitting the evidence objected to. It is abundantly settled, that the opinions of witnesses as to amount of damages sustained by a party, whether in the appropriation of his land for railroad purposes or otherwise, are not competent evidence. * * * The questions put did not, in terms, ask the opinions of the witnesses as to the damages, but they could elicit no answers but such as were based upon opinion, on that subject. The questions put were

Hagaman v. Moore et al.

but an indirect mode of obtaining the opinions of the wit-
nesses. While a witness might give his opinion on the sub-
ject of the value of the defendant's land, he might not as to
the amount of damage done to it by the construction of the
railroad; and, when stating how much less the land is ren-
dered worth by the construction of the railroad, he is but
stating how much in his opinion the land is injured by the
construction of the road."

The facts and the reasoning are plainly in point. It can
not be any more competent to prove benefits in this way than
damages. The questions, indeed, are one and the same, be-
cause in just so far as benefits are established, damages are
excluded.

While some of the witnesses in this case were asked how
much the appellant's lands were worth, and how much they
would be worth if the road were opened, others were asked
directly how much per acre would be added to the value by
reason of the opening of the road. Either way, it is evident
that the witnesses were required to state mere opinions,
not about an existing thing, but about matters of a spec-
ulative, uncertain nature, involving the character of road which
should be made, how it should be worked and kept, the uses
to which the appellant's land had been and might thereafter
be put, and the like conjectural considerations. To what ex-
tent the various elements of the question entered into the con-
clusion of each witness, the juror could not know; and should
rather exercise his own judgment than be required to consider
the opinions of witnesses which, in such cases and upon such
questions, if admitted, are not likely to be impartial, and, if
falsely stated, impose little or no legal responsibility on the wit-
ness, ordinarily, because incapable of proof. See cases cited in
*Baltimore, etc., R. W. Co.* v. *Johnson, supra;* also, *Baltimore,
etc., R. W. Co.* v. *Johnson,* 59 Ind. 480; *Baltimore, etc., R. W.
Co.* v. *Stoner,* 59 Ind. 579; *Noah* v. *Angle,* 63 Ind. 425;
*Evansville, etc., R. R. Co.* v. *Fitzpatrick,* 10 Ind. 120.

Just as from the facts and circumstances the jury, without

the aid of opinions from others, may judge of the public utility of the proposed way, so, upon the relevant facts and circumstances, they should judge of the injuries and benefits to lands not taken, but affected. Of what is actually to be taken, the value may be directly proven; but, of the resulting effects upon other property, the jury should decide; and if, by the aid of testimony, maps, photographs and other means, the existing circumstances can not be made sufficiently clear, the jury may be required to view the premises.

Judgment reversed, with costs, and with instructions to grant the appellant a new trial.