Harry J. SMITH

v.

Ronald T. SPEERS.

Supreme Judicial Court of Maine.

May 22, 1969.

Libhart & Cox, by David M. Cox, Brewer, for plaintiff.

Leon V. Walker Jr., Asst. Atty. Gen., Augusta, for defendant.

Before WILLIAMSON, C. J., and WEBBER, DUFRESNE, and WEATHERBEE, JJ.

WEBBER, Justice.

On report on an agreed statement of facts. This was a complaint for declara-

tory judgment. The State of Maine, originally named as one party defendant, has by stipulation been supplanted by the defendant Speers who "at all material times was acting for the State of Maine in his capacity as Commissioner of Inland Fisheries and Game."

The following facts and issues of law are agreed upon. On August 17, 1966 the said Speers in his said capacity obtained an Order of Taking from the Governor and Executive Council of certain lands belonging to the plaintiff. The purported taking was pursuant to authority granted by 1 M.R.S.A. §§ 811 to 813 inclusive. Since that date the said Commissioner has exercised control over the property and the County Commissioners awarded damages to this plaintiff on December 5, 1966. Should the final result of this appeal be that there was a proper taking, the Department of Inland Fisheries and Game would exert complete control over the property on behalf of the State of Maine. Located on the land taken are a residence, shop, storage shed, two dams and a generator for the manufacture of electric power. The residence, shop and storage shed are situated on Parcel #2 while the dams and generator are located on Parcel #1, all as described in paragraph #1 of the complaint. Parcel #2 does not abut the Dennys River.

The parties recognize the following issues for determination here.

(a) Do 1 M.R.S.A. §§ 811 to 813 inclusive constitute an unconstitutional delegation of legislative power?

(b) Is the taking void because it takes more property than is necessary to accomplish the purpose stated in the Order of Taking?

(c) Is the taking void because 35 M.R.S.A. § 3241 does not apply to eminent domain proceedings for property taken by the State of Maine and there is no other statutory proceeding whereby the property owner may be compensated?

(d) Is the taking void in that it was not the intent of the Legislature to delegate the power of eminent domain for the purpose of the preservation of Atlantic Sea Run Salmon?

The Order of Taking recites that the property is taken "for the purpose of regulating the flow of water in the Dennys River for the protection of Atlantic Sea Run Salmon and other species of fish" and that the same is taken "as for public uses."

Art. I, Sec. 21 of the Maine Constitution provides: "Private property shall not be taken for public uses without just compensation; nor unless the public exigencies require it."

The pertinent sections of 1 M.R.S.A. are as follows:

"Sec. 811. The taking of real estate or of any interest therein for the use of the State by right of eminent domain may be effected as provided in sections 812 and 813.

Sec. 812. Whenever the public exigencies require it, the Governor and Council may adopt an order of taking which shall contain a description of the land taken, sufficiently accurate for its identification, and shall state the interest therein taken and the purpose for which such property is taken.

Sec. 813. All proceedings under sections 811 and 812 shall be in accordance with Title 35, chapter 263."

■ The power of eminent domain, though vested in the Legislature, may be delegated by appropriate statute to public officials. Nichols on Eminent Domain, Vol. 1, Page 319, Sec. 3.21 states the rule in these terms: "The power to initiate the exercise of the power of eminent domain resides under ordinary conditions exclusively in the legislature. In some cases the legislature itself, by the mere enactment of a statute, effects the taking of certain land or interests in land for the public

use, *but ordinarily the taking of private property involves so much detail work that it is delegated to administrative officers* or to subordinate bodies, to be exercised by them * * *, and there can be no doubt that, for proper purposes, the power of eminent domain may be delegated to duly accredited agencies." (Emphasis ours). Nichols (supra) at Page 322 in Sec. 3.21 [1] further states, "When property is taken by the state itself, the power to select the land to be taken and to institute the proceedings to take it is usually delegated by the legislature to some public official, or to a commission appointed by the governor;" and Page 329 in Sec. 3.21 [3] continues, "The party to whom the power of eminent domain has been delegated stands in the same position, ordinarily, as the legislature, in that such donee may determine all questions which are political rather than judicial in their nature. Thus such grantee of the power may determine, without being subject to judicial review, (a) whether the power shall be invoked, and (b) the time when and the extent to which it shall be invoked." Finally, Nichols states at Page 540 in Sec. 4.11, "The overwhelming weight of authority makes clear beyond any possibility of doubt that the question of the necessity or expediency of a taking in eminent domain lies within the discretion of the legislature and is not a proper subject of judicial review."

These principles are fully accepted in Maine. Hayford v. City of Bangor (1907) 102 Me. 340, 343, 345, 66 A. 731, 11 L.R.A., N.S., 940; Bowden v. York Shore Water Co. (1915) 114 Me. 150, 155, 156, 95 A. 779; Smith v. Western Maine Power Company (1926) 125 Me. 238, 132 A. 740. See generally 26 Am.Jur.2d 643, Sec. 5 and 29A C.J.S. Eminent Domain § 21, p. 215.

■ Our Court has made it abundantly clear, however, that the Legislature must initially make at least a *general* determination that the public exigencies require that *some property* be taken for certain defined public uses. The Legislature may then properly delegate to its chosen agents

the power to make the *specific* determination that the public exigencies require that a *particular property* be taken at a particular time for a particular legislatively authorized public purpose. In Hayford v. City of Bangor, supra, the Legislature by statute conferred upon certain municipalities the power to take lands for "public parks, squares or a public library building." The Court said, "The legislature has not undertaken to say, by its action, that any specific piece of land may be taken, but has declared *that the public exigency, requiring that some private property may be taken for a public library building, exists, and thus the exigency or necessity is established by the enactment of the statute authorizing the taking.* It will therefore be observed that the municipal officers do not pass upon the question of necessity. That has already been done by the Legislature before their duties begin." (Emphasis ours)

In Bowden v. York Shore Water Co., supra, the Legislature conferred upon a water company the power of eminent domain for its chartered purposes. The Court said, "The Legislature conferred upon the defendant the right of eminent domain for public uses. It could confer it for no other kind of use. Of the exigency or necessity for its exercise the Legislature was the sole judge. It is a political or governmental question. Eminent domain is the right of the sovereign state. The State by the Legislature may determine the necessity for itself as to a particular piece of property, *or it may determine the general question of necessity,* and commit to the corporation to which the power is granted, or to its officers, *the right to determine the extent to which it is necessary to exercise the power."* (Emphasis supplied)

It is precisely this *general* determination that has not been made in the instant case. The State construes 1 M.R.S.A., Secs. 811 to 813, as delegating to the Governor and Council virtually unlimited authority to decide that there is a public necessity for the

taking of some property for such public purposes as they may determine, and thereafter to decide that there is a necessity to take specific property for one or more of such public purposes. We think that such a sweeping delegation of responsibility would exceed permissible limits and amount to an abrogation of legislative power. In so saying, we do not intimate or suggest that the Governor and Council could not properly act pursuant to Secs. 811 to 813 inclusive if by separate statute the Legislature had first made the *general* determination that property generally may be taken for the public purposes involved.

That Secs. 811 to 813 inclusive were more narrowly conceived by the Legislature when first enacted is borne out by the legislative history. The Legislative Record reveals that a camp for aged indigents had been operated in Jefferson under lease to the State of Maine. The lease was about to expire and the State desired to purchase the property to continue the project. The then owners were offering to sell at a price which the Legislature deemed exorbitant. A bill was accordingly introduced which was enacted as emergency legislation. The result was P.L.1945, Chapter 248 captioned "AN ACT Providing for the Taking of Property by the State by Right of Eminent Domain." The emergency preamble clearly reveals the immediate and limited purpose of the legislation. It states:

"Whereas, the purchase of land by and for the state of Maine cannot be effected at a reasonable figure, and

Whereas, it is necessary that the title to land now leased by the state be acquired, and

Whereas, such land cannot be acquired except by taking under the right of eminent domain, and

Whereas, a taking is necessary to protect the capital investment of the state, and

Whereas, in the judgment of the legislature these facts create an emergency * * *."

The legislation then enacted to become effective immediately is substantially and for our purposes the same as the present Secs. 811 to 813 inclusive.

■ We turn now to a determination as to whether or not the Legislature has expressly or impliedly indicated that property may be taken "for the protection of Atlantic Sea Run Salmon and other species of fish." By P.L.1947, Ch. 399 the Legislature first created the Atlantic Sea Run Salmon Commission and clothed it with power "to promulgate rules and regulations providing for the times, number and manner in which Atlantic sea run salmon may be taken in all waters of the state" and to control the licensing of fishing therefor. The licensing provisions, not material here, were altered by P.L.1949, Ch. 224 and the 1947 law as thus amended was incorporated in the statutory revision as R.S.1954, Ch. 38, Sec. 38. This entire chapter was repealed by P.L.1959, Ch. 331, Sec. 2 but the pre-existing powers and duties of the Commission were conferred upon it anew by the enactment of P.L. 1959, Ch. 331, Sec. 1, Subsecs. 19 to 21 inclusive. By P.L.1963, Ch. 315 the Legislature for the first time gave to the Commission the authority "to purchase or lease, within this State, lands, dams and other structures, to acquire flowage rights, mill privileges and rights-of-way, and to build dams and other structures, for the purpose of conservation of Atlantic sea run salmon, provided prior rights of towns are not affected thereby." These provisions without any change pertinent to this discussion now appear as 12 M.R.S.A. §§ 3601 to 3604 inclusive, as amended. Although the Legislature has clearly provided for the acquiring of property by "purchase or lease" for the public purpose of conservation of the species, there is conspicuously lacking any determination that the public exigencies require the *taking* of any property for this purpose. This omission

stands in sharp contrast to the express authority conferred upon the Commissioner of Inland Fisheries and Game to take property by eminent domain for game management areas, fish hatcheries and feeding stations, 12 M.R.S.A. Sec. 2151; or the power delegated to the State Highway Commission to take property by eminent domain for highway purposes, 23 M.R.S.A. Secs. 153 and 154; or the authority conferred on the Governor and Council to take property for forts, fortifications and other public purposes expressly enumerated, 1 M.R.S.A. Secs. 13 and 14; or the eminent domain power given to the Maine State Park and Recreation Commission to take land for state parks (with the consent of the Governor and Council and subject to express limitations), 12 M.R.S.A. Sec. 602 (1).

We conclude that whenever the Legislature has made a *general* determination with respect to public exigency, it has known how to express its finding by statute and to delegate the *specific* determination to an appropriate agency. Although the power of eminent domain cannot be employed except for public uses, it is not every public use that warrants the use of the power. The Governor and Council may properly proceed with a taking pursuant to 1 M.R.S.A. Secs. 811 to 813 inclusive if the Legislature has not delegated the authority elsewhere and if the Legislature has first authorized the use of eminent domain for the particular public purpose involved. 1 M.R.S.A. Secs. 811 to 813 inclusive must be strictly construed as authorizing the Governor and Council to make only the *specific* determination that the public exigencies require the taking of *particular* property for any one or more of such public purposes. These sections further provide expressly and by reference to other statutes the steps to be taken in perfecting such a taking.

This being a complaint for declaratory judgment reported to the Law Court for our decision, it is necessary to declare the rights of the plaintiff. For the reasons set forth above, the taking must be declared void and of no effect as to him and his title in and to the property purportedly taken. This being so, it is unnecessary to consider other issues raised by plaintiff.

So ordered.

MARDEN and TAPLEY, JJ., did not sit.