**STATE of Maine**

v.

**Harry J. SMITH.**

Supreme Judicial Court of Maine.

Aug. 29, 1969.

Alan D. Graves, County Atty., Machias, for plaintiff.

Libhart & Cox, by Wayne P. Libhart, Brewer, for defendant.

Before WILLIAMSON, C. J., and WEBBER, MARDEN and DUFRESNE, JJ.

DUFRESNE, Justice.

The defendant, Harry J. Smith, in a complaint before District Court Four, Division of Northern Washington, was charged with the crime of unlawfully operating and maintaining a junkyard on or about May 19, 1966 in Meddybemps, Maine. 30 M.R. S.A. § 2451 et seq. (See P.L.1965, c. 285.) Following his appeal from a finding of guilty and sentence in the District Court, the defendant on July 13, 1966 was convicted in the Superior Court, on a plea of nolo contendere, of the crime charged and sentenced to pay a fine of $500 and costs of $10, the foregoing sentence being suspended and the defendant committed to the custody and control of the State Probation and Parole Board for the term of two years upon the usual general conditions with an added special condition reading as follows:

"That within sixty (60) days from this date you will make changes in your junk-

yard in Meddybemps, so relocating or removing the material and so constructing fences or screens as to bring the area within complete compliance with the provisions of Title 30, Sections 2451–B, 2454 and 2455, as amended, and the applicable rules and regulations of the Maine State Highway Commission."

At the June term of the Superior Court, 1968 the State Probation and Parole Board filed its report and charged the defendant with violation of the conditions of his probation, 34 M.R.S.A. § 1633, and the presiding justice, after hearing, found Mr. Smith in violation, revoked the probation and ordered the original sentence to be complied with. Timely notice of appeal has raised the propriety of the lower court order for our consideration.

In one of his points on appeal the defendant claims error in the foregoing judicial action on the ground that at a previous hearing on a similar complaint defendant's release thereon by another justice of the Superior Court "because he might not be able to comply with the special conditions" of the probation, was in effect a dismissal of the probation itself. The record discloses the following factual setting which gave rise to the reference hearing and release. The original complaint which undoubtedly caused the sentencing judge to attach thereto the special condition of probation in pertinent part reads as follows:

"That, on or about the nineteenth day of May, 1966, in the Town of Meddybemps, County of Washington, and State of Maine, the above named defendant Harry J. Smith, did [sic] *unlawfully did then and there operate and maintain a junkyard, so called,* being a place where discarded, worn-out or junked plumbing, heating supplies, household appliances and furniture, discarded, scrap or junked lumber, old or scrapped, brass, rope, rags, paper trash, rubber debris, waste and all scrap iron, steel and other scrap ferrous or non-ferrous material, thereof, were then and there located in a

yard and field used as a place of storage and *then and there displayed to public view, without first having obtained a valid, non-transferable permit to do so from the municipal officers of the said Town of Meddybemps,* said junk-yard, so called, being then and there *located* then and there *less than 600 feet from Route 191,* being a State aid road now designated as such by the State Highway Commission *and being* then and there *within view from said Highway and not being then and there kept entirely screened to ordinary view from those passing upon said highway by* nattural objects or *well constructed and properly maintained fences at least six feet high as specified as acceptable to said municipal officers in said required valid non-transferable permit."* [Emphasis supplied]

It is obvious that the defendant was being charged with the violation of 30 M.R.S.A. § 2458 which provides the penalty for the operation and maintenance of a junkyard without the necessary municipal permit under 30 M.R.S.A. § 2452, (P.L.1965, c. 285, § 3). 30 M.R.S.A. § 2454 (P.L.1965, c. 285, § 5) on the other hand ordains that no permit shall be granted for the establishment, operation or maintenance of any junkyard within less than 600 feet from any state aid highway, if within view of said highway, except upon condition that the area of the junkyard be kept entirely screened to ordinary view by those passing upon said highway by natural objects or well constructed and properly maintained fences at least 6 feet high, acceptable to the municipal officers. The municipal permit and the erection and maintenance of a sufficient fence to foreclose a view of the junkyard from a state aid highway when the junkyard is located within 600 feet of such road are part and parcel of a comprehensive single legislative mandate. One cannot legally exist without the other. Under the special conditions of probation the defendant had 60 days within which to so relocate or remove the material and so

constructing fences or screens as to bring the area within complete compliance with the law. Although the requirement of a municipal permit was not mentioned, if the foregoing conditions were complied with, municipal permission would undoubtedly have been readily obtained.

It is undisputed in the record that the defendant had started compliance with the special conditions of his probation by building the required fence and removing some of the alleged junk property from view, when the State of Maine in August of 1966 took all of defendant's property pertinent to the issue in the instant case under an order of taking from the Governor and Executive Council. This taking by the State under its apparent power of eminent domain for the purpose of the preservation of Atlantic Sea Run Salmon was contested by the defendant in the courts and his appeal was pending at the time of the first and second hearings on violation of probation. See, Smith v. Speers, Opinion May 22, 1969, Me., 253 A.2d 701. It is further uncontradicted in this record that after the taking the State of Maine removed part of the fence which the defendant had erected to meet the terms of his probation. It is no wonder that upon the first hearing on violation of probation the then presiding justice released the defendant from having to answer further to the pending charge of violation of probation and stated as his reason for doing so, that the defendant might not be able to comply with the special conditions.

The only meaning that such statement of the presiding justice could have had on the defendant was that since the State of Maine had taken control of the property, the defendant could not possibly comply with the conditions of probation relating to corrective action to be taken respecting the junkyard area and that such conditions of probation regarding the operation of a junkyard would be suspended during state control and until the State's title and right of control were legally adjudicated.

The release of the defendant however did not amount to a general discharge or termination of probation. 34 M.R.S.A. § 1634 provides for the discharge of a probationer when no longer in need of supervision or upon complete fulfilment of the conditions of probation. The presiding justice did not purport to act under this section of the statute. He did not in express words discharge the defendant from probation, nor did he terminate it. He released the defendant from further detention by the court or the probation officer in connection with the then pending complaint for violation of probation.

The presiding justice at the second hearing for violation of probation accepted as evidence statements of defendant's counsel concerning an agreement between the State of Maine and defendant pending court decision upon the legality of the State's taking.

"MR. LIBHART: There is an agreement between our office and the Attorney General's office that the State of Maine may operate the dam at the mouth of the lake so that they can control the inflow of water to nurture the Atlantic salmon."

\*   \*   \*   \*   \*   \*

"MR. LIBHART: We have an agreement that they will not go in there and take over the rest of the land until the two cases which are pending before the Supreme Judicial Court are determined.

THE COURT: Well, then, do you deny as a result of that, that you have control of these premises?

MR. LIBHART: We have the use of the premises to continue his business of refilling cylinders, selling structural steel, and this type of thing. We have a right to use and to live there in the house.

We have no right to use the property for any other purpose—

THE COURT: Including cleaning it up?

MR. LIBHART: Yes, sir."

We do recognize that violation of probationary conditions is not an offense in itself and is not a criminal action and that findings of fact by a justice sitting without a jury in such a proceeding are final so long as they are supported by the evidence. State v. Allen, 1967, Me., 235 A.2d 529. A close scrutiny of the record however discloses no evidence whatsoever, even in the light of the photographs taken on June 24, 1968, which was not before the court at the time of the first hearing on the charge of violation of probation respecting which the defendant was released. The court's action at that time was not a finding of violation of probation followed by a continuance thereof because it appeared just to do so, as 34 M.R.S.A. § 1633 permits. The court's decision as characterized by its statement was rather a suspension of the probationary conditions respecting the operation of a junkyard for the duration of the State's control over the property. Principles of double jeopardy are not involved, but for the State to lull the defendant into a false sense of security through judicial action reasonably indicating that so far as the junkyard conditions were concerned they were to be temporarily disregarded until final resolution of the State's right of control over the area and then, some 2 weeks before the running out of the term of probation and while the State still retained control of the area, to depart from such court-sanctioned understandng without notice and possible opportunity for corrective action and enforce an identical charge of violation of probation as was first before the court on November 21, 1966 smacks of arbitrary state action falling short of governmental fair play. To find on this record a violation of probation was error of law. Other points of error are relied upon in this appeal but we do not reach them. The entry will be

Appeal sustained.

WEATHERBEE, J., did not sit.

TAPLEY, J., sat at argument, but retired before this opinion was adopted.