[No. 34327. Department One. December 4, 1958.]

THE STATE OF WASHINGTON, *Appellant,* v. HELENE M. FOX et al., *Respondents.*[1]

[1]Reported in 332 P. (2d) 943.

*The Attorney General, Edward E. Level* and *Lawrence D. Silvernale, Assistants,* for appellant.

*Ries & Kenison,* for respondents.

WEAVER, J.—The state of Washington appeals from a judgment entered after a jury verdict determining the amount of award to be paid respondents in an action of eminent domain.

Respondents own 18.86 acres of vacant land in the town of Westlake, Grant county, Washington. It abuts primary state highway No. 18 (U. S. 10) on the south for a distance of 1,652 feet.

Respondents state in their brief that a public hearing was held on April 14, 1955, after due notice to property owners, as provided by RCW 47.52.072, a portion of the "Limited Access Facilities" statute. July 26, 1955, the Washington state highway commission entered an order (a) establishing primary state highway No. 18, from Burke Junction to Moses Lake, as a limited-access highway; and (b), *inter alia*, approving new construction and access plans as they affected respondents' land. The record is silent whether there was any review of this order as provided in RCW 47.52.075.

November 28, 1956, the state filed its petition and notice in condemnation. December 14, 1956, pursuant to notice, the court entered an order adjudicating public use and necessity.

At the trial to determine the amount of respondents' award, the state introduced in evidence three large drawings that depict the effect the limited-access highway will have on respondents' land, and a large model (two by eight feet) that shows the existing highway in front of respondents' property and, by means of an "overlay," illustrates most graphically the four-lane highway, the land-service roads, and the "clover leaf" or "traffic interchange" that will be installed a short distance to the west of respondents' property.

Specifically, the plans disclose (1) that the state proposes to take a strip of respondents' land that abuts the existing highway at the northwest corner of the tract, that varies in width from ten to thirty feet, that is four hundred thirty-five feet long, and that has an approximate area of two tenths of an acre; (2) that respondents' right of access, light, view and air to and from primary state highway No. 18 will be restricted, but respondents will have access to a *two-way* frontage service road to be constructed along the west three hundred thirty-five feet of their highway frontage. This east-west, two-way frontage road will lead to the east-west, four-lane, limited-access highway that will extend along the north boundary of respondents' property. It is apparent from the plans that respondents will not be able to leave their property and immediately make a left turn into the

westbound traffic lanes of the four-lane limited-access highway, because a median strip is to be installed between the east and west lanes of traffic.

Respondents' right to compensation springs from (1) the loss of the strip of land, four hundred thirty-five feet long, containing approximately two tenths of an acre; (2) the prohibition of ingress and egress to and from the highway of the east one thousand three hundred seventeen feet of their property; and (3) damages, if any, suffered by reason of the change of method of ingress and egress of the west three hundred thirty-five feet of respondents' highway frontage.

The state's assignments of error fall into four categories: (1) The court erred when it admitted testimony that referred to the traffic routes by which westbound vehicular traffic on primary state highway No. 18 would reach and return from respondents' property to the through lanes of traffic. (2) The court erred when it admitted testimony that concerned loss of value to the remainder of respondents' property, due to the construction of a median strip that prohibited left-hand turns on the highway in front of respondents' property. (3) The court erred when it submitted to the jury instruction No. 11, which advised that the change of routes of ingress and egress to the east and west lanes of traffic on the four-lane highway could be considered an element of damages in fixing respondents' award. (4) The court erred when it refused to give certain of the state's requested instructions concerning restriction of ingress and egress arising from the state's exercise of the police power.

The state's assignments of error must necessarily rest upon the proposition that, concurrent with a compensable taking in a condemnation proceeding, the state may validly exercise the police power for traffic control and public safety, for which there can be no compensation, even though it affects the method of ingress and egress.

The crux of respondents' argument is: The state cannot extract one feature of an overall plan and label it an exercise of the police power in order to reduce the compensation

payable to the property owner in a condemnation proceeding.

■ *In State v. Ward*, 41 Wn. (2d) 794, 796, 252 P. (2d) 279 (1953), this court stated:

"The limited access feature of the highway must, therefore, be presented to the jury together with all other features of the proposed construction, such as service roads, to enable it to properly assess all the elements of damage and special benefit that will result therefrom."

■ Since the maps and models illustrate in detail the traffic routes by which westbound vehicular traffic would reach respondents' remaining property and return from the property to the through lanes of the limited-access facility, the trial court did not err when it admitted oral testimony explaining these routes; hence, the state's first assignment of error is without merit. ·

■ This does not mean, however, that respondents have a property right in the continuance or maintenance of a flow of traffic past their property, nor that they are entitled to damages resulting from re-routing, diversion of traffic, circuity of route, or prohibition of left-hand·turns because of future construction of a median strip on the highway abutting their property. These are matters that fall within the general definition of traffic-control devices authorized by statute and encompassed within the police power of the state. As indicated in *Walker v. State*, 48 Wn. (2d) 587, 592, 295 P. (2d) 328 (1956), we find nothing in the limited-access-facilities statutes (RCW 47.52) that shows a legislative intent to surrender or modify the right of the highway commission to install and maintain such traffic-control devices under the police power. ·

■ The statutory process, by which an existing highway (RCW· 47.52.011) ·becomes a limited-access facility, is a combination of the exercise of eminent domain and the police power. *Carazalla v. State*, 269 Wis. 593, 70 N. W. (2d) 208, 71 N. W. (2d) 276 (1955). The state must compensate for property rights taken by eminent domain; damages resulting from the exercise of the police power are noncompensable. *Walker v. State, supra.* Hence, we cannot sub-

scribe to respondents' contention that the state does not have the right to show the category under which a particular aspect of the limited-access-facility plan falls. This is permissible for the purpose of fixing the award for those items that are compensable as a matter of law, not for the purpose of reducing the compensation payable to the property owner in a condemnation proceeding.

Although *Walker v. State, supra,* was not a condemnation action, the abutting property owner sought compensation for diminution of his right of ingress and egress. The opinion deals only with the right of the highway department, under the police power, to prohibit left turns across a four-lane highway by the installation of a concrete center-line curb. Therein, the court said:

"Plaintiffs have no property right in the continuation or maintenance of the flow of traffic past their property. They still have free and unhampered ingress and egress to their property. Once on the highway, to which they have free access, they are in the same position and subject to the same police power regulations as every other member of the traveling public. Plaintiffs, and every member of the traveling public subject to traffic regulations, have the same right of free access *to* the property *from* the highway. Re-routing and diversion of traffic are police power regulations. Circuity of route, resulting from an exercise of the police power, is an incidental result of a lawful act. It is not the taking or damaging of a property right.

"We have found no authority, nor has any been called to our attention, which allows, to the abutting property owner, damages allegedly arising from statutes or ordinances (a) establishing one-way streets; (b) forbidding 'U' and left turns; or (c) authorizing the use of other suitable traffic-control devices deemed necessary by the proper authorities to warn, regulate, and guide traffic upon public thoroughfares.

"Although an abutting property owner may be inconvenienced by one-way traffic regulations immediately in front of his property, he has no remedy if such regulation be reasonably adapted to the benefit of the traveling public. The property owner must point to illegality, fraud, or arbitrary or capricious conduct.

"Plaintiffs allege that defendants propose to install the center-line curb 'pursuant to the police powers of the State

of Washington.' They do not allege facts from which it might be concluded that this exercise of the police power is arbitrary and capricious." (p. 590)

Since the instant proceeding is a combination of the exercise of the power of eminent domain and the police power, it follows that the law of the *Walker* decision is apposite to the instant case.

We conclude, therefore, that the court erred when it admitted testimony that concerned loss of value to the remainder of respondents' property, due to the construction of a median strip that prohibited left-hand turns on the highway in front of respondents' property. *Blumenstein v. Long Beach*, 143 Cal. App. (2d) 264, 299 P. (2d) 347 (1956).

Instruction No. 11, to which error is assigned, should not have been given, for it instructed the jury that, in fixing respondents' award, it could consider the evidence that we have held to be inadmissible.

The state's requested instructions R, S, and T, in so far as they state the rules of law announced in *State v. Walker*, *supra*, and this opinion, should have been given.

For the reasons indicated, the judgment should be reversed and the cause remanded for a new trial.

It is so ordered.

HILL, C. J., MALLERY, FINLEY, and OTT, JJ., concur.