5-2016                                   333 S. W. 2d 728

Opinion delivered March 28, 1960.

[Rehearing denied April 25, 1960]

*William H. Donham*, for appellant.

*Ben M. McCray, Catlett & Henderson,* for appellee.

PAUL WARD, Associate Justice.  This appeal presents to this Court for solution an important and far-reaching question.  Briefly stated the question is:  Is the loss to an owner of land abutting a public highway occasioned by a diversion of traffic a compensable loss?  The essential and undisputed facts posing the above question and presenting the background out of which it arose are substantially as hereinafter set out.

Sometime prior to 1954 the Arkansas State Highway Commission (hereinafter referred to as the "Commission") acquired a right-of-way from Little Rock to Benton for the purpose of reconstructing and relocating Highway 67-70 between those two cities.  Said right-of-

way was 200 feet wide in front of the property which is the subject of this litigation. It appears that the objective of the Commission was to construct along the entire length of said right-of-way two separate concrete strips — one strip to carry traffic from Little Rock to Benton and the other strip to carry traffic from Benton to Little Rock. At first only one such concrete strip was constructed and opened to traffic, and this strip was used to carry traffic both ways pending the construction of the other strip. The above mentioned concrete strip was located on the north portion of the right-of-way and for convenience will hereinafter be referred to as Strip No. 1 — this strip is the one that was designed to eventually carry one-way traffic from Little Rock to Benton.

On November 22, 1954 appellee, Mrs. Sallie Harvey Bingham, purchased 5.6 acres of land abutting Strip No. 1 on the north for which it appears that she paid approximately $5,500.00. On May 13, 1957 Mrs. Bingham leased the entire 5.6 acres to the Ark-La-Tex Oil Company, a corporation owned wholly by her two sons, for a period of ten years beginning October 1, 1955 with the Lessee having the option to renew for two successive five-year periods. Under the lease Ark-La-Tex Oil Company was to pay $100.00 per month net rent. Although, as set out above, the lease was actually dated May 13, 1957, we gather from the record that the lease arrangement was actually made in 1955 because the record shows that the Oil Company had already expended approximately $17,000.00 in the erection of a filling station which was opened for business in October 1955. The Ark-La-Tex Oil Company, also one of the appellees herein, has at all times since the last mentioned date operated the said filling station principally for the sale of oil and gas. Hereinafter we will refer to Mrs. Bingham as the Lessor and to the oil company as the Lessee. When Lessee constructed the filling station it also constructed four concrete driveways connecting the filling station with Strip No. 1.

After the erection of the filling station the Commission designated Highway 67-70 as Interstate Route No.

30 pursuant to a plan to construct a limited access highway from Little Rock to Benton as a part of an interstate highway system. It was therefore deemed necessary, and the Commission did, condemn and acquire, by eminent domain, a strip of ground 50 feet wide on both sides of the original right-of-way in order to provide access roads necessary to such a highway. These access roads (now completed) are hard-surfaced and carry traffic both ways, and they parallel both sides of the main highway its entire length with entrances to the main highway at numerous points. At the present time Interstate Route No. 30 is completed from Little Rock to Benton, with Strip No. 1 open to traffic from Little Rock to Benton, and a similar parallel strip carrying traffic from Benton to Little Rock.

When the Commission filed this suit in February of 1958 to condemn and acquire the 50-foot strip of land off of the south side of Lessor's property it was apparent that it would include four concrete driveways which Lessee had constructed to connect its filling station with Strip No. 1, and it was also apparent that the north line of the new highway right-of-way would come within a few feet of appellee's pump stations. Although Lessee would have ready access to the access road which was to be built on the 50-foot strip of land for traffic in both directions, yet it was apparent he would not have ready access to entrance upon Strip No. 1 (carrying through traffic from Little Rock to Benton) since the said access road's nearest connection with Strip No. 1 was somewhat more than a mile from the filling station. The apparent result was that the Lessee would not be able to sell gasoline to as many people traveling Strip No. 1 as he was able to do previously. The land actually taken from the Lessor amounted to .945 acres.

In response to appellant's condemnation petition both Lessor and Lessee claimed damages by reason of the last taking by the Commission. After a hearing the jury returned a verdict in favor of Lessee in the amount of $30,000.00 and in favor of the Lessor in the amount of $9,000.00, and judgment was rendered accordingly, from

which judgments come this appeal. For a reversal appellant relies on five separate points, of which three relate to instructions given to the jury by the trial court, one is related to the introduction of certain testimony to prove the extent of damages, and the other (closely related to the latter point) is stated as follows: "The court erred in allowing the introduction of estimates of damages based solely on diversion of traffic away from the premises". Our discussion will be limited primarily to the last mentioned point because we have concluded it contains merit, and because we feel our determination of that issue largely eliminates the necessity of considering the other points.

For the purpose of this opinion and for the sake of brevity, many of appellees' contentions may be conceded. It is not disputed that Lessee spent approximately $17,000.00 in erecting and equipping the filling station; that it was selling well over 30,000 gallons of gasoline per month to persons traveling Strip No. 1 prior to the time of the new taking; that it had a profitable business and that practically all of this business was lost after the new taking; and that, in fact this loss equalled the amount of the judgment obtained. In other words, it may be conceded that this judgment in favor of Lessee should be affirmed if the Commission is liable for the loss occasioned by diversions of traffic in this particular case.

The importance of the issue here presented and the far-reaching effect of its determination commands careful consideration of the excellent briefs by both sides and the authorities and reasoning presented therein. A definite determination of the involved issue is all the more important because numerous situations of like nature will in all probability hereafter arise because of the growing public demand for access-controlled highways.

An examination of all the available authorities convincingly suggests the conclusion that the Commission is not liable for Lessee's loss of business resulting from a diversion of traffic. Although there is no decision of this Court precisely in point, there are several decisions

of this Court and of other courts that lead unerringly to the conclusion theretofore mentioned.

In the case of *Hempstead County* v. *Huddleston,* 182 Ark. 276, 31 S. W. 2d 300, there was presented an issue somewhat similar to the one under consideration here. The County Court laid out a new highway through appellee's lands which changed the location of the old road which had run close to his residence, and appellee sought to recover "for damages to land, crops, timber and fences by reason of the relocation and construction" of the new highway. The claim was disallowed by the County Court and an appeal was taken to the Circuit Court where the trial resulted in a judgment in favor of appellee. This judgment was reversed upon appeal to this Court because of the Circuit Court's error in giving a certain instruction which allowed appellee to recover for damages resulting from the relocation. The specific objection to the instruction was that it permitted the jury to consider "as an element of damages the relocation of the road so as to leave the main residence of the appellee off the road . . ." This Court in condemning the instruction said: "We think the instruction is open to the objection made against it, especially when taken in connection with the evidence. Appellee was permitted to testify over appellant's objections to the measure of his damages, which included the fact that the old road ran by his residence and that the new road did not". The Court further pointed out that other witnesses testified to damages by reason of the relocation of the road so that it did not run immediately in front of appellee's residence, and then made this statement: "We are of the opinion that this was not a proper element of damage to be considered by the jury, and that the court erred in giving Instruction No. A . . . No person has a vested right in the maintenance of a public highway in any particular place, as the power is in the State to relocate the road at any time in the public interest. Therefore, the change in the road so as to leave appellee's residence off the new road did not constitute an element of damage in this case". We do not agree with appellee's attempt to discount the relevancy of this Court's decision in the

*Huddleston* case, *supra.* It occurs to us that while the issue there was not expressed in the exact words that it is expressed in the case under consideration, yet we think the same principle is involved.

In the case of *Greer* v. *City of Texarkana,* 201 Ark. 1041, 147 S. W. 2d 1004, appellant insisted that the effect of changing Highway 71 was to destroy his property or at least depreciate its value because he no longer had the same convenient access to the highway. He was denied damages in the trial court and on appeal this Court affirmed the trial court and in doing so it said among other things: "Appellant has not been deprived of his means of ingress and egress, as Dudley Avenue, on which his property is located, remains unaffected by the proposed change. Unaffected also is Jackson Street running into Dudley Avenue at appellant's corner. Appellant's damage, as found by the court below, results from the *diversion of the traffic*; but this was not a recoverable element of damage", citing among other cases the *Huddleston* case, *supra.* (Emphasis supplied). In that case the Court also cited with approval the case of *Tuggle* v. *Tribble,* 177 Ark. 296, 6 S. W. 2d 312. In the cited case Tuggle lived on Harlan Boulevard, designed as a public road, near Hot Springs. The County Court ordered a relocation some 56 feet from Tuggle's residence and he sought to enjoin the County. In denying relief this Court announced certain principles which we think are applicable to the case under consideration. Among other things this Court said: "It is next contended that the County Court had no right to vacate a suburban highway which had been dedicated to the public, and that D. M. Tuggle and other abutting landowners had a vested interest in the matter because they had bought property relying upon the fact that the road in front of their property would always be a public road. If this were true, there could never be any change in an existing highway, because doubtless all abutting property owners would claim that they bought their property relying upon the fact that it was abutting upon a public easement, and that the road could never be discontinued or changed". "In this

connection it may be said that there can be no change of an existing highway that does not cause some private inconvenience, and, in that sense, injury to the abutting property owners, who have adapted themselves to the existing order of things and have purchased property on a highway which they believed would never be changed." It seems to us that there is a significant parallel between the position in which Tuggle found himself and the position appellees now find themselves in the case under consideration. In the *Tuggle* case the Court also said: "Of course, the County Court should not change or alter the public highway unless the public convenience or necessity requires such change." The same thing might be said in connection with the case under consideration, but appellees make no contention that the Commission, in constructing Interstate Highway No. 30, or in providing access road connections, acted unreasonably.

Another case which clearly pronounces the well established principle that private enterprise must yield to the public welfare and convenience is the *City of Fort Smith* v. *Van Zandt*, 197 Ark. 91, 122 S. W. 2d 187. There appellee owned a tourist and trailer camp near the middle of a block 597 feet long on Midland Avenue in the City of Fort Smith. The avenue was being widened and otherwise altered by the City Commissioners in such a way that, concededly, it would hurt appellee's business and also lessen the value of his property. On that ground he successfully sought the aid of the Chancery Court to enjoin the City. The City appealed and this Court, in reversing the trial court, among other things said: "We think the learned trial court erred in so holding . . . it may be true that appellee's property will be adversely affected, but no more so than any other property similarly situated . . ." "There can be no doubt that the city has the power and the duty to make reasonable provision for the safety of persons and property using its streets by the enactment of ordinances, resolutions or by-laws looking to that end, and the city council or commission, or other municipal authorities have a wide discretion on such matters."

There are many decisions from other jurisdictions, while not exactly in point with the issue and facts presented in the case under consideration which announce certain applicable principles sustaining the conclusions heretofore announced. We will now examine a few of these decisions.

In the case of *Muse* v. *Mississippi State Highway Commission,* 233 Miss. 694, 103 So. 2d 839, the facts are very similar to the facts in this case. There the State Highway Commission condemned a strip of land owned by Mrs. Muse lying along the west side of U. S. Highway 51, North, consisting of .61 acres. Previously the Commission had already acquired a right-of-way and was in the process of constructing a four-lane highway. One strip of the pavement carried the southbound traffic and the other strip carried the northbound traffic being divided by a neutral zone or median strip, 30 to 40 feet side. If the highway had been completed under that plan, with no outside access roads added, the owners of appellant's property would have had direct access to the southbound lane but would have been required to drive southwardly a short distance before they could have entered the northbound traffic lane. When a strip in front of appellant's house was condemned for the purpose of constructing an access road a claim was made for damages not only for the land taken but because the right of access had been destroyed or greatly impaired. The trial court refused to allow damages for the loss or impairment of access and appellant appealed. In affirming the trial court the Supreme Court held, among other things, that appellant had not been damaged by the taking of the right of direct access to the inside lane or main traveled portion of said highway by the construction of the outside lanes to said highway to which the appellant had access. The court quoted with approval the following: "Private rights relative to highways may be regulated in many ways under the police power and that without compensation." The Court also said: "It is undoubtedly true that the abutting landowner on a conventional public highway has a special right of access and user in the highway; and that right is a property right which can-

not be damaged or taken from him without due compensation. The right of access is appurtenant to his land, and to destroy that right is to damage his property . . . But there is also a *coexistent right belonging to the public,* to use and improve the highway for the purpose of travel; *and the owner of the abutting land has no absolute right, as against the public,* to insist that the adjacent highway always remains available for his use in the same manner and to the same extent as when it was constructed . . . As the problem of regulating motor vehicle traffic on the highways has become more and more complex, new standards of design for highway construction have been adopted by the highway authorities to reduce the hazards of travel and expedite the flow of traffic . . . Such rules and regulations have been recognized by all of the authorities as a valid exercise of the police power.'' (Emphasis supplied).

In the case of *Iowa State Highway Commission* v. *Smith,* 248 Iowa 869, 82 N. W. 2d 755, the highway was changed so as to affect adversely the use of a residence and a filling station owned by Smith. The result of the change was that less traffic would patronize the filling station. The Supreme Court in disallowing certain elements of damage claimed by Smith had this to say: ''Insofar as the regulations may divert some traffic (mainly eastbound) from defendant's filling station they have no legal cause for complaint. *They have no vested right to the continuance of existing traffic past their establishment.''* (Emphasis supplied).

In the case of *The State ex rel Merritt et al* v. *Linzell, Dir., Department of Highways of Ohio,* 163 Ohio St. 97, 126 N. E. 2d 53, the question for decision as stated by the Court was: Where property abuts on an existing state highway and such highway is relocated so that the property does not abut on the new highway but continues to abut on the old original highway which connects with the new highway, is there a taking of any property rights of such property owner? Before answering that question the Court said: ''The facts in the instant case do not show the impairment of the use of the highway on which rela-

tors' property abuts but only the opening of the new highway which diverts public travel from the old highway." Then, the Court, in answering the above question in the negative made this statement: "It is now an established doctrine in most jurisdictions that such an owner has no right to the *continuation or maintenance of the flow of traffic past his property.* The diminution in the value of land occasioned by a public improvement that diverts the main flow of traffic from in front of *one's premises is noncompensable* . . . citing cases . . . The change in traffic flow in such a case is the result of a lawful act, and is not *the taking or damaging of a property right."* (Emphasis supplied). In this same case the Court quoted with approval the following: " 'Before a party is entitled to recover, it must be determined that the thing taken for the public use, for which he asks compensation, is his private property.' "

The case of *The State of Washington* v. *Helene M. Fox, et al,* 53 Wash. 2d 216, 332 P. 2d 943, strongly supports the views above expressed and, to our minds, refutes appellee's contention that the theory of police regulation has no part in the case under consideration because there was an actual taking of land. In the cited case appellee's damages were predicated on an actual taking of land and also upon the diminution of accessibility. The Court, in stating appellee's position said: "The crux of respondents' argument is: The State cannot extract one feature of an overall plan and label it an exercise of the police power in order to reduce the compensation payable to the property owner in a condemnation proceeding." Since the Court did not go along with the above argument we take it to mean that there was no inconsistency in allowing the State to take a parcel of land by eminent domain and at the same time apply the doctrine of the police power in regulating traffic upon the highway after it is constructed. It is significant here also that the Court in this case made the following statement after first approving the introduction of testimony regarding the limited access facility: "This does not mean, however, that respondents have a property right in the continuance or

maintenance of a flow of traffic past their property, . . ."

In the case of *Cecil W. Blumenstein* v. *City of Long Beach,* 143 Cal. App. 2d 264, 299 P. 2d 347, appellant sought "to recover compensation for damage suffered by lot due to street reconstruction which separated lot from street." The trial court gave appellee damages based on diversion of traffic, although appellant had moved that such testimony should not be considered. In speaking of this motion the Court said: "The Motion was based on the admission by the witness under cross-examination that he had let factors influence his determination of the decline in market value such as a presumed future loss of vehicular parking in front of subject property . . . and a diminution, diversion and rearrangement of traffic in front of subject property because of the construction of the improvement." The Court, in disapproving the admissibility of that kind of testimony, stated: "Appellate decisions of this state have made it clear that damages resulting from mere diversion of traffic or inconvenience resulting from circuity of travel in reaching the subject property are noncompensable."

Applying the principles so clearly announced in the preceding cases, the only logical deduction is that a loss occasioned by the diversion of traffic is not compensable. It is not denied in this case that Lessee's major loss of business was the result of a diversion of through traffic on Strip No. 1 from its filling station after the limited access highway was completed. For us to hold that such loss by Lessee is compensable would amount to erecting an almost intolerable barrier in the way of further construction of super-highways. The right here claimed by Lessee is not to be confused with its right of ingress and egress. The latter right, as heretofore pointed out in previous citations, is a property right which is compensable, but Lessee has that right undiminished by virtue of the access road in front of its station.

We have carefully considered the numerous decisions cited by appellees and find that they deal with the right

of ingress and egress and not with losses resulting from a diversion of traffic. We think it would serve no useful purpose to discuss those cases separately, but would only unduly extend this opinion.

What we have heretofore said does not mean, however, that Lessor and Lessee are not entitled to damages in some amount. Since practically all of appellees' testimony to show damages was directed to the amount of loss occasioned by the diversion of traffic and since, as previously pointed out, such testimony was incompetent, the result is that there is no substantial evidence to support the judgment in favor of Lessor in the amount of $9,000.00 or the judgment in favor of Lessee in the amount of $30,000.00. There is, however, in the record testimony by the Commission's *own* witness, Hamilton, to sustain a judgment in the amount of $6,159.00 for Lessor and a judgment in the amount of $8,790.00 for Lessee. We find no evidence in the record to support a judgment in favor of either Lessor or Lessee in excess of the amounts last mentioned.

Since appellees do not contend that the trial court committed any error against their interest in the trial below, and since the cause appears to have been fully developed, the judgments must be modified as heretofore mentioned, and, as so modified, they are affirmed.

Modified and affirmed.

JOHNSON, J., dissents.

McFADDIN, J., concurs.

JIM JOHNSON, Associate Justice, dissenting. On November 22, 1954, the appellee, Sallie Harvey Bingham, purchased 5.6 acres having a frontage of 823 feet on Highway 67-70, which served both east and west bound traffic between Little Rock and Benton. She leased the property to appellee, Ark-La-Tex Oil Company, at a monthly rental of $100 for a primary term of ten years commencing October 1, 1955, with an option on the part of the lessee to renew for two additional periods of five years each. Ark-La-Tex secured a permit from appellant to con-

struct a service station on 1½ acres of the leased land and completed such construction on October 5, 1955, at a cost of $17,171.52. Construction of a restaurant or motel was contemplated by the lessee on the remainder of the leased premises. The service station of Ark-La-Tex sold an average of 37,000 gallons of gasoline a month. On April 11, 1958, under the power of eminent domain, appellant took a strip of land 50 feet wide and 823 feet long across the front of appellees' property where it bordered on Highway 67-70, and also took the access the remainder of such property had enjoyed to the highway. The taking of the land is authorized by Act 419 of 1953, and the taking of the right of access or ingress and egress to, from or across the highway to and from the remainder of the appellees' land is authorized by Act 383 of 1953.

Witnesses called by the appellee, Sallie Harvey Bingham, testified that she, as the owner of the fee, was entitled to recover damages in a sum varying between $10,-000 and $17,250, and witnesses called by the appellee, Ark-La-Tex, testified that it, as the holder of the leasehold, was entitled to recover damages from $55,000 to $77,700. On the other hand, the witnesses called by the appellant estimated that the damages to the interest of appellee, Sallie Harvey Bingham, ranged from a low of $2,300 to a high of $6,159, and the damages to the interest of the appellee, Ark-La-Tex ranged from a minimum of $5,200 to a maximum of $8,790. A jury question therefore was presented and the jury returned a verdict in the sum of $9,000 for the appellee, Sallie Harvey Bingham, and in the sum of $30,000 for the appellee, Ark-La-Tex. At the time of taking the appellant deposited $6,500 for the benefit of appellee, Sallie Harvey Bingham.

The disparity between the estimates of damages to which the witnesses for the respective parties testified springs from the fact that the witnesses for appellant specifically excluded from their estimate any amount of damage attributable to the deprivation of the access which the property of the appellees possessed to and from the existing highway prior to the taking.

The question posed is: Is the taking from property abutting a highway the right of access to such highway compensable?

Section 22, Article II of the Constitution of this State specifically and unequivocally states that private property shall not be *taken, appropriated* or *damaged* for public use without just compensation therefor. An easement of access is a valuable property right and when such easement is destroyed or damaged for public use, the Constitution directs that payment be made therefor.

The easement of access which the owner of property has is not the mere right of going out from his place of business onto the highway and returning therefrom to his own land, but is the convenience in the use of his property with respect to the rest of the world. If the landowner is a merchant, a hotel keeper or a restaurant owner, his easement of access is commensurate with the uses to which his property is devoted. The right of access includes the opportunity for a man's customers to come to his place of business without unreasonable hindrance or interruption. A property devoted to business is of little value when business is turned away by obstructions or barriers or denial of ingress and egress. *Reining* v. *New York, L. & W. Ry. Co.,* 13 N. Y. S. 238, 240; 10 *McQuillin Municipal Corporations* 671, Third Edition.

In *Campbell* v. *Arkansas State Highway Commission,* 183 Ark. 780, 38 S. W. 2d 753, this Court readily held:

"Under our decisions, *the owner of property abutting upon a* street or *highway has an easement in such* street or *highway for the purpose of ingress and egress* which attaches to his property, and *in which he has a right of property* as fully as in the lot itself; *and any subsequent act by which that easement is substantially impaired for the benefit of the public is a damage* to the lot itself *within the meaning of the constitutional provision for which the owner is entitled to compensation.* The reason is that its easement in the street or highway is incident to the lot itself, and any damage, whether by

destruction or impairment, is a damage to the property owner and independent of any damage sustained by the public generally.'' (Emphasis supplied).

That decision has never been overturned; indeed, it cannot be cast aside without emasculating one of the most important, inviolate and fundamental provisions of the Constitution.

The logic of the *Campbell* decision, *supra*, was approved by the Court in *Arkansas State Highway Commission* v. *Kincannon*, 193 Ark. 450, 100 S. W. 2d 969, when it said:

''When property is damaged, its value is reduced, and this reduction in value is, to the extent thereof, the taking of the property. So that *the owner whose property has been damaged, but not physically taken, has the same right to demand compensation for his damages as has the owner whose property has been occupied and taken from his possession.*'' (Emphasis supplied).

This Court in various eminent domain cases has approved damages for the taking of the fee simple title to property, *Arkansas State Highway Comm.* v. *Carder*, 228 Ark. 8, 305 S. W. 2d 330; has endorsed compensation for severance damages, *Arkansas State Highway Comm.* v. *Dupree*, 228 Ark. 1032, 311 S. W. 2d 791; has affirmed awards for diminution in value due to a change in grade of a highway, *Hot Spring County* v. *Bowman*, The Law Reporter, Vol. 104, No. 12, page 400; and has approved as an element of damage *''the added inconvenience* and hazard, if any, of *occupying and using said lands* or any part thereof *caused by the construction of the new highway''*, *Herndon* v. *Pulaski County*, 196 Ark. 284, 117 S. W. 2d 1051. (Emphasis supplied). It is hardly debatable that the right of access, which we have held to be a property right, can be taken by eminent domain without the payment of damages.

It has always been the rule that the measure of damages, if any, is the difference between the fair market value of the lands immediately before the construction of the highway and the fair market value thereof imme-

diately after such construction. *Herndon* v. *Pulaski County, supra.* Further, every element that can fairly enter into the question of market value and which a business man of ordinary prudence would consider before purchasing the property should be considered by the jury in arriving at the difference between the value of the property before and after the taking *or damage to it. Kirk* v. *Pulaski Road Imp. Dist. No. 10,* 172 Ark. 1031, 291 S. W. 793; *Arkansas State Highway Comm.* v. *Speck,* The Law Reporter, Vol. 105, No. 7, page 272, 281. No one could say that a private individual would ignore the right of access or lack of it in reaching a decision as to whether or not he would buy or would pay a certain sum for the property of the appellees. The kind and extent of access or the lack of it is always considered by a man of ordinary prudence in deciding whether or not he will purchase residential, commercial or rural real estate. The appellant erred in directing its witnesses to exclude right of access or lack of it as an element in valuing appellees' property immediately before and immediately after the taking, and in such regard attempted to take property of the appellees without compensation in violation of the Constitution. That flagrant abuse cannot and will not be tolerated. If in the construction of the interstate highway system grades are changed, property is severed, inconvenience is imposed, hazard is created, or access is diminished or destroyed, the owner of the property so affected is entitled to compensation. To do less would undermine the right of ownership of property and destroy the very foundation of our government. To say that the cost of compensating for such property right would be an excessive burden on the appellant is beside the point. If this property right can be **taken** without compensation, then all property rights can be taken without compensation, and private property rights no longer exist. The appellant without any reservation or condition whatever definitely took all right of access which the property of the appellees enjoyed to the public way. Appellant stated in its brief and in oral argument that the appellees had access to the public way by a circuitous route over a surface road, but the record does

not substantiate these statements, and we must be guided by what the appellant actually did and how such action affected the property rights of the appellees. The Declaration of Taking reads:

". . . the estate to be taken for public use is the full fee simple absolute title together with any and all rights or easements of existing, future, or potential common law or statutory rights of access, or ingress and egress to, from or across this facility to or from abutting and adjoining land."

Since the Declaration of Taking sets forth that all rights of ingress and egress are taken, and since this Court has consistently held that the right of ingress and egress is a property right, and since the Constitution directs that private property shall not be taken or damaged without the payment of compensation therefor, the judgment of the court below should be affirmed.

Numerous cases from various foreign jurisdictions were cited in the respective briefs of opposing counsel. I have carefully examined these decisions but in view of our own Constitution and our own prior holdings I deem it unnecessary to extend this opinion further by commenting upon them.

For the reasons stated above, I respectfully dissent.