Henry JACOBSON

v.

STATE of Maine Acting By and Through the STATE HIGHWAY COMMISSION.

Archie CURCIONE and Gloria Curcione

v.

David H. STEVENS, Vaughan Daggett and City of Waterville.

Supreme Judicial Court of Maine.

July 18, 1968.

Frank E. Southard, Jr., Augusta, Lester T. Jolovitz, Waterville, for appellant.

Paul G. Creteau, Cape Elizabeth, Lester A. Olson, State Highway Comm., Legal Dept., Augusta, Morton A. Brody, Waterville, Joseph B. Campbell, Augusta, Jerome G. Daviau, Waterville, for appellee.

Before WILLIAMSON, C. J., and WEBBER, TAPLEY, MARDEN and WEATHERBEE, JJ.

WEATHERBEE, Justice.

On March 1, 1963, the plaintiff, Henry Jacobson, was the owner of a lot of land situated at the intersection of Chaplin Street and College Avenue, in the City of Waterville, on which is the Hotel Cassini. On that date College Avenue was a two-way street and plaintiff's hotel could be reached directly by both north bound and south bound traffic on the avenue. On that date in furtherance of its plan to redesign the surface of College Avenue, the State, acting through its State Highway Commission, took a narrow strip of the plaintiff's land comprising some 2,500 square feet. Following the taking, the State constructed an island in front of plaintiff's property and a median dividing line along that part of College Avenue, making direct access to plaintiff's property possible only to south bound traffic and requiring north bound prospective customers to leave College Avenue and follow a circuitous route in order to reach the hotel.

The plaintiff appealed from the award of the Land Damage Board. A pre-trial conference was held in the Superior Court at which time it was recognized that the case presents an issue of law novel in this State—whether reduction in market value resulting from diversion of traffic is a compensable element of damage if it is coupled with a partial taking of land.

Before trial the parties presented the presiding justice with requested instructions setting out their polarized views on this issue and the justice announced his intention to give the jury the instructions requested by the plaintiff. The justice then, on defendant's motion, ordered the matter reported for determination of the contested issue.

Some seven months after the taking, Archie and Gloria Curcione became the occupants and proprietors of the hotel property under a lease from the plaintiff. On July 12, 1965, they were granted permission to intervene in the plaintiff's action upon their claim that they, as plaintiff's lessees, suffered damages as a result of the taking and are entitled to have them determined in the present action. At their request the City of Waterville was made a party defendant. On February 14, 1966, the Intervenors also commenced a civil action sounding in tort against the City of Waterville and David H. Stevens, the Chairman of the Maine State Highway Commission, and Vaughn M. Daggett, the Commission's Engineer, in their personal capacities, claiming that the City and the other two defendants, as individuals, created a nuisance in the reconstruction of College Avenue which has damaged the Intervenors.

Defendants Stevens and Daggett received from the presiding justice a summary judgment in their favor in this tort action and the Intervenors have appealed.

We have before us, then, the plaintiff's original action here on report to which the Curciones have intervened and the appeal of the Intervenors to the granting of the summary judgment in favor of Mr. Stevens and Mr. Daggett.

We will consider the two problems separately.

First, is diminution in value of land as a result of diversion or rerouting of traffic

compensable when coupled with a partial taking?

■ Our Constitution requires that the owner of property taken for public use by eminent domain be paid "just compensation". Constitution of Maine, Article I, Section 21. Our courts have repeatedly accepted the measure of just compensation to be the difference in the fair market value of the property immediately before the taking and that of the property remaining immediately after the taking. Knox Lime Company v. Maine, State Highway Commission, Me., 230 A.2d 814, 824.

■ The plaintiff reminds us that our court has frequently stated that the landowner is entitled to be compensated for "all the direct damages to the owner of the lot, confined to that lot, occasioned by the taking of his land." and that this includes such damages "as it may be fairly anticipated will result from the taking of the land." Bangor & Piscataquis Railroad Company v. McComb, 60 Me. 290, 297 (1872). However, we consider that the damages here in question resulted from the redirection of the flow of traffic and not from the taking of plaintiff's land and was only concurrent with the taking of the land.

We find no recorded decision in this country holding that a landowner abutting a highway has suffered a compensable injury if, *without* any taking of his land, the flow of traffic past his property is diverted. The issue involving diversion of traffic *accompanied* by some taking of land has arisen frequently in recent years in other jurisdictions and we find that the great majority of the courts have held that any consideration of damages produced by the rerouting or diversion of traffic must be excluded from the jury's determination of damages resulting from the taking.

> " * * * The general rule is that an abutting landowner has no vested interest in the flow of traffic past his premises and that any damages sustained be-
> cause of a diversion of traffic is not compensable. This rule applies where a road or street is relocated. * * * It also applies where one-way streets are created. * * * It likewise applies to the control of turns by double lines, islands, and median strips. * * * Mere circuity of travel to and from real property, resulting from a lawful exercise of the police power in controlling traffic, does not of itself constitute an impairment of the right of ingress and egress to and from such property where the resulting interference is but an inconvenience shared in common with the general public and is necessarily in the public interest in making highway travel safer and more efficient. If the owner has the same access to the general highway system as before, this injury is the same in kind as that suffered by the general public and is not compensable. * * * The fact that the construction of the islands in the instant case was concurrent with the construction of the widened street is not a material factor. The rule is the same as if the islands had been constructed without the taking of any property by eminent domain." Painter v. State, Dept. of Roads, 177 Neb. 905, 131 N.W.2d 587, 590 (1964)

The reasoning of these courts has been that the landowner has no vested property right in the continuation of the flow of traffic past his door and that changes of traffic patterns and routes result from the exercise of the police power of the State and are non-compensable even when the traffic diversion is concurrent with a taking of land. Such landowner having had no property rights in the traffic flow before the change in traffic pattern, lost no rights when the change was made. These decisions hold that while the abutting landowner has a property right in reasonable access to the public streets he has no right that such access and the opportunity for his guests to reach him shall be by the most direct or most convenient route. We

are impressed by the reasoning of the courts stating this point of view in State v. Paterson, 134 Mont. 52, 328 P.2d 617 (1958); State v. Fox, 53 Wash.2d 216, 332 P.2d 943 (1958); City of Memphis v. Hood, 208 Tenn. 319, 345 S.W.2d 887 (1961); Weber Basin Water District v. Hislop, 12 Utah 2d 64, 362 P.2d 580 (1961); People ex rel. Department of Public Works v. Russell, 48 Cal.2d 189, 309 P. 2d 10 (1957); Nelson v. State Highway Board, 110 Vt. 44, 1 A.2d 689, 693, 118 A. L.R. 915 (1938).

Approval of this view is found in Nichols on Eminent Domain, Section 6.4443 (4) and Kaltenbach, Just Compensation, Section 2–5–2.

The few jurisdictions which adopt the contrary view appear to take the position that while reduced convenience of access as a result of traffic diversion is not an independent compensable element of damage, yet it may be taken into consideration in determining the reduction in market value of the property as a result of the taking.

> "The circumstances that thereby the improvements and business enterprises are made less accessible to the highway, whereas they were situated upon it before the new work, may, or may not, affect the market value of the entire tract. That is not an element of damage but a circumstance to enter into the question of the effect of the improvement upon the entire tract. The circumstance that thereby traffic no longer goes by or near the location of the store and other improvements on the land need not necessarily depreciate the market value of the six hundred and twenty acres. But the jury should be informed of the circumstance and have the question left to their ultimate decision." McRea v. Marion County, 222 Ala. 511, 133 So. 278 (1931). See also Riddle v. State Highway Commission, 184 Kan. 603, 339 P.2d 301 (1959); State ex rel. Morrison v. Thelberg, 87 Ariz. 318, 350 P.2d 988 (1960).

The plaintiff urges that the minority position is the appropriate one for our jurisdiction especially in view of the language of our statute. In 1961 our Legislature created the Land Damage Board and established statutory procedure for acquisition of and compensation for land taken by the State for highway purposes. Chapter 295, Section 3, P.L.1961, which added Sections 20–A to 20–I to Chapter 23, R.S.1954 (now 23 M.R.S.A. Sec. 151–159). Section 20–B amended the statute by adding to the purposes for which the Commission may take land for highways the words "or to provide for the health, safety and welfare of the public using [any state or state aid highway]." The plaintiff contends that this is traditional police power language and that its inclusion in the powers given to the commission, with no reference in the statute to the exclusion from compensation of damage caused by the exercise of the State's police power, is indicative of the legislative intention that the new statute should add an additional element of damage. We are not so convinced. Here it is not the taking of land that has damaged plaintiff but the re-direction of the flow of traffic and we find in the new statute no intention by the Legislature to create a vested right in the permanency of traffic flow or to add a new element of damage.

We feel that the majority rule is the correct one, that a diversion of traffic is an exercise of the police power and that damages thus resulting to the landowner are not compensable. The property owner has the right to reasonable access to the public streets but no property right that his travel from his land to his destination or the public's travel to his property shall be in the most direct route possible.

The Intervenors seek to participate in this appeal. Their interest in the property in issue began seven months after the taking when they became the plaintiff's lessees. They have no standing to share in any award for any taking by the State Highway Commission. Only the owner of the land at the time of the taking is entitled to the appeal from the decision of the Land Damage Board, which is provided

"aggrieved" persons by Chapter 23, Section 20–G, Revised Statutes 1954 (now 23 M.R.S.A. Section 157) (Hayford v. Bangor, 103 Me. 434, 69 A. 688 (1908)) unless the then owner has assigned his rights to damages, which was not done here. Rines v. City of Portland, 93 Me. 227, 44 A. 925 (1899).

Intervenors' motion to intervene in the plaintiff's appeal was dated June 23, 1965. On February 14, 1966, Intervenors brought a complaint (under title of Henry Jacobson vs. State Highway Commission, and Archie Curcione and Gloria Curcione) against "the City of Waterville and David H. Stevens, Chairman of the Maine State Highway Commission and Vaughn M. Daggett, Engineer, in their personal capacities." The complaint alleges that the action of these two defendants in reconstructing College Avenue and Roberts Square streets making the changes from two-way to one-way traffic and diverting northbound traffic on College Avenue created a nuisance and reduced the value of the Intervenors' interest in the property in question. Intervenors do not claim that these two State officials acted arbitrarily or unreasonably but contend that the taking of the land in question and the alteration of the streets and their traffic patterns were unlawful acts because they were without statutory authority.

These two officials moved for a summary judgment in Intervenors' action against them. It was granted, and Intervenors appealed. The action is still pending against the City of Waterville.

M.R.C.P. Rule 56, Section (c), provides that a summary judgment shall be granted " * * * if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law."

■ Although we have found that the Intervenors are not entitled to share in the award from the State which the statute provides for the taking, we must now examine their tort claim against the two individuals. The owner of land against which eminent domain proceedings have been commenced may test the validity of the taking, although he did not acquire his interest until after the taking. Bowden v. York Shore Water Co., 114 Me. 150, 95 A. 779 (1915).

Chapter 23, Section 19 of the Revised Statutes of 1954 as amended by Chapter 305 of the Public Laws of 1955 (now 23 M.R.S.A. § 651) empowered the Commission to "alter [and] widen * * * *any state or state aid highway.*" (Emphasis added)

Chapter 23, Section 20–B of the Revised Statutes of 1954, as amended by Chapter 295, Section 3 of the Public Laws of 1961 (now 23 M.R.S.A. Section 153) authorized the Commission to take land "to lay out and establish, construct, improve or maintain, or to provide a change of location or alignment of * * * any *state or state aid highway* * * * with necessary ways and access thereto, for the construction, improvement and maintenance of *state and state aid highways.*" (Emphasis added)

The two officials filed no answer to this tort claim and we are not informed whether they admit the actions charged to them and, if so, in what manner they justify them. Particularly, the record does not disclose that the taking was for a state or state aid highway, if such was the case. In Mr. Jacobson's appeal, he alleges that the taking was "in compliance with Section 20–C of Chapter 295, Public Laws of 1961." Section 20–C referred to the action of the Commission in taking land for state or state aid roads. The State Highway Commission in its answer admits this allegation. Thus both Mr. Jacobson and the State Highway Commission agree in their pleadings that the Commission was engaged in taking land for a state or state aid road. The Intervenors were permitted to become parties to the plaintiff's appeal from the decision of the Land Damage Board but they did so maintaining that the

taking was *not* one which was authorized by statute. Therefore, we cannot find that the Intervenors have agreed that the actions of the two officials involved taking land for state or state aid highways.

The Intervenors, alleging that the taking was without statutory authority, appear also to maintain that the taking was by virtue of what Intervenors contend was an invalid contract between the Commission and the City of Waterville. The record does not demonstrate whether or not the highway in question had been designated by the Commission as a "controlled access highway" so as to require, as Intervenors contend, the approval of the municipal officers, as set forth in Chapter 23, Section 11, Revised Statutes of 1954 (now 23 M. R.S.A. Section 306).

██ The documents before us, consisting of the pleadings and the contract between the Commission and the City of Waterville, and the right of way map, do not show that there is no valid issue as to any material fact and we cannot say that the two officials were entitled to a judgment as a matter of law. The allegations of the Intervenors against them remain unproved and unrefuted. We conclude that the granting of this motion for summary judgment was error.

On the basis of the record here, we do not reach the issue of personal liability of public officers for official actions which are not authorized by law.

The motion of defendant Stevens to dismiss the Intervenors' appeal for delay in furnishing the record is denied as we find a substantial compliance with M.R.C.P. Rule 75(g). Intervenors' appeal from summary judgment against them is sustained.

Case remanded to the Superior Court for trial of the plaintiff's appeal from the award of the Land Damage Board and of Intervenors' tort claim against Mr. Stevens and Mr. Daggett. Intervenors' tort claim action shall be tried separate from plaintiff's appeal as different issues and measures of damages are involved.

DUFRESNE, J., did not sit.

TAPLEY, J., sat but did not participate in this decision.